**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re Omnicom Group, Inc. ERISA Litigation* | Consolidated Case No.:<br>1:20-cv-04141-CM-SLC |

---

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

## **TABLE OF CONTENTS**

Table of Authorities.................................................................................................................iii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 4

    A.    The Parties, the Plan, and Plaintiffs' Claims........................................................ 4

    B.    Procedural History ................................................................................................ 5

    C.    Discovery Efforts ................................................................................................. 6

    D.    Settlement Negotiations ....................................................................................... 7

    E.    The Proposed Settlement ..................................................................................... 7

    F.    The Notice Plan and Settlement Administration.................................................. 8

ARGUMENT ........................................................................................................................... 9

    A.    The Settlement Warrants Preliminary Approval .................................................. 9

        1.    Legal Standard ......................................................................................... 9

        2.    The Court is Likely to Grant Final Approval of the Proposed
            Settlement ............................................................................................... 10

            i.    The Rule 23(e)(2) Factors Weigh in Favor of Preliminary
                Approval ....................................................................................... 10

                a.    Adequacy of Representation ............................................. 10

                b.    The Settlement is the Result of Good Faith, Arm's-
                    Length Negotiations by Well-Informed and Experienced
                    Counsel .............................................................................. 11

                c.    Adequacy of Relief ......................................................... 12

            ii.    The Remaining *Grinell* Adequacy Factors Weigh in Favor of
                Preliminary Approval.................................................................... 16

                  a.    The Reaction of the Class to the Settlement is Better
                    Assessed at the Final Approval Stage .............................. 17

i

    b. The Ability of Defendants to Withstand a Great Judgment Does Not Weigh Against Preliminary Approval ........................................................................ 17

    c. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Risks support Preliminary Approval .......................................................... 17

 B. The Proposed Notice Plan Should be Approved ................................................... 19

 C. Certification of the Class Should be Maintained for Settlement Purposes ........... 21

  1. The Settlement Class Satisfies Rule 23(a) ................................................. 21

   i. Numerosity ...................................................................................... 21

   ii. Commonality .................................................................................... 22

   iii. Typicality ......................................................................................... 23

   iv. Adequacy ......................................................................................... 23

  2. Certification Remains Appropriate Under Rule 23(b)(1) ......................... 24

 D. The Plan of Allocation Should be Approved ........................................................ 24

CONCLUSION .................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Amchem Prods, Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................................................ 21

*Caridad v. Metro-N. Commuter R.R.*,
   191 F.3d 283 (2d Cir. 1999) ............................................................................................ 23

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) ............................................................................................ 22

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..................................................................................*passim*

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) .............................................................................................. 22

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) ........................................................................................................ 22

*Griffin v. Flagstar Bancorp, Inc.*,
   2013 WL 4779017 (E.D. Mich. July 29, 2013) .............................................................. 21

*Guevoura Fund Ltd. v. Silverman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................................................ 25

*In re AOL Time Warner ERISA Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................. 17, 25

*In re AOL Time Warner*,
   2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) ............................................................... 25

*In re Currency Conversion Fee Antitrust Litig.*,
   2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ................................................................. 19

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. Jul. 27, 2007) ................................................................. 23

*In re Facebook, Inc., IPO Secs. and Derivative Litig.*,
   343 F. Supp. 3d 394 (Nov. 26, 2018) ............................................................................. 25

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov 8, 2010) ........................................................... 11, 18

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) ........................................................................ 23, 24

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................... 13, 20

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................................ *passim*

*In re Interpublic Sec. Litig.*,
  2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ..................................................... 19

*In re IPO Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) ..................................................................... 10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  327 F.R.D. 483 (S.D.N.Y. 2008) .................................................................... 18

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................... 21, 25

*In re Oxford Health Plan, Inc.*,
  191 F.R.D. 369 (S.D.N.Y. 2000) .................................................................... 23

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................... 12, 25

*In re Platinum & Palladium Commod. Litig.*,
  2014 WL 3500655 (S.D.N.Y. July 15, 2014) ...................................................... 9

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................... *passim*

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
  2012 WL 1964451 (D.N.J. May 31, 2012) ......................................................... 12

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
  2012 WL 3589610 (D. Conn. Aug. 20, 2012) ..................................................... 19

*In re US FoodService Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013) ........................................................................ 21

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ..................................................... 11

*In re Wachovia Corp. ERISA Litig.*,
  2011 WL 7787962 (W.D.N.C. Oct. 24, 2011) ..................................................... 12

*In re Warner Chilcott Ltd. Sec. Litig.*,
  2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ....................................................... 16, 17

*In re Worldcom, Inc. ERISA Litig.*,
  2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ............................................................. 26

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
  2016 WL 6542707 (D. Conn. Nov. 3, 2016) .................................................................. 9

*Larson v. Allina Health System*,
  2019 WL 6208648 (D. Minn. Nov. 21, 2019) ........................................................... 26

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................................... 13

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) .................................................................................................. 24

*Mehling v. New York Life Ins. Co.*,
  246 F.R.D. 467 (E.D. Pa. 2007) ............................................................................... 20

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .................................................................................................. 20

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ..................................................................................... 18

*Oppenlander v. Standard Oil Co.*,
  64 F.R.D. 597 (D. Colo. 1974) ................................................................................. 13

*Plummer v. Chem. Bank*,
  668 F.2d 654 (2d Cir. 1982) ..................................................................................... 13

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,
  2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015) ......................................................... 25

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ..................................................................................... 23

*Torres v. Gristedes Operating Corp.*,
  2010 WL 2572937 (S.D.N.Y. June 1, 2010) ............................................................ 10

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
  2018 WL 3000490 (C.D. Cal. Feb. 6, 2018) ............................................................ 26

*Vellali v. Yale Univ.*,
  333 F.R.D. 10 (D. Conn. 2019) ........................................................................... 22, 23

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ................................................................................ 22, 23

*Wal-Mart Stores, Inc. v. Vi*sa *U.S.A.,*
    396 F.3d 96 (2d Cir. 2005) ........................................................................ 9, 11

*Wilson v. DirectBuy, Inc.,*
    2011 WL 2050537 (D. Conn. May 16, 2011)............................................. 19

## **Statutes**

29 U.S.C. § 1104 ............................................................................................ 4

29 U.S.C. § 1109 ............................................................................................ 15

29 U.S.C. § 1132 ............................................................................................ 15

## **Rules**

Fed. R. Civ. P. 23 ....................................................................................... *passim*

Fed. R. Civ. P. 23(a) .................................................................................. *passim*

Fed. R. Civ. P. 23(b) .................................................................................. 3, 21, 24

Fed. R. Civ. P. 23(c) ...................................................................................... 20

Fed. R. Civ. P. 23(e) .................................................................................. *passim*

Plaintiffs,[1] individually and on behalf of the Omnicom Group Retirement Savings Plan (the "Plan") and the proposed Settlement Class, hereby move (the "Motion") pursuant to Federal Rule of Civil Procedure 23 for entry of an Order that: (1) preliminarily approves the Settlement with Defendants, as memorialized in the Settlement Agreement dated June 23, 2023 and exhibits thereto;[2] (2) finds that the Class may be maintained through such time as the Court finally approves of the Settlement; (3) approves the proposed notice plan in the Settlement Agreement and proposed Preliminary Approval Order; and (4) sets a final approval hearing on a date convenient for the Court at least 140 days after the entry of a preliminary approval order. A proposed Preliminary Approval Order is attached as Exhibit C to the Settlement Agreement.

## **INTRODUCTION**

Following several years of vigorous litigation in this complex ERISA action, including numerous dispositive and procedural motions, full discovery, and preparation for a trial originally scheduled for February 2023, the Parties negotiated a proposed settlement ("Settlement") that would provide total relief of $2,450,000.00 to the Settlement Class. The proposed Settlement, which was reached just days before the trial was scheduled to begin, would provide significant and immediate benefit to the Settlement Class, while recognizing the complexity, risk, and delay associated with continued litigation. Indeed, the Parties have confronted numerous complex and novel factual and legal issues in the litigation, including around standing, class certification, and theories of liability and damages. The road ahead would

---

[1] "Plaintiffs" refers to Carol Maisonette, Shane Tepper, Surfina Adams, Michael Mensack, and Daniel Dise. "Defendants" refers to Omnicom Group, Inc., the Board of Directors of Omnicom Group, Inc., the Administrative Committee of the Omnicom Group Retirement Savings Plan, and Does No. 1-20.

[2] The Settlement Agreement and its exhibits are attached to the accompanying Declaration of Laurie Rubinow. Terms not defined herein shall have the same meaning as in the Settlement Agreement.

have been similarly complex, involving a bench trial with testimony anticipated from over a dozen fact witnesses and several experts on each side, post-trial motions, and likely appeals. Plaintiffs and Class Counsel submit that the Settlement represents an excellent result for the Plan and Settlement Class under all of the circumstances and warrants preliminary approval.

Consistent with the Class previously certified by the Court, the scope of the relief provided by the Settlement, and well-established principles applicable to representative actions under ERISA, the Settlement Class is defined as:

> participants and beneficiaries in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period, who: (1) through the Plan invested in the Fidelity Freedom Funds suite of target date funds; or (2) through the Plan paid a flat per-participant annual recordkeeping fee charged by the Plan's recordkeeper. Excluded from the Settlement Class are Defendants and their Beneficiaries.

Settlement Agreement, § 1.47. Certification of the action should be maintained through the entry of a final judgment, as none of the circumstances supporting the Court's certification order has changed, and the class action device is the appropriate means to administer the Settlement relief.

The proposed Settlement, if approved, will resolve all claims that were or could have been asserted by Plaintiffs on behalf of the Settlement Class and the Plan against Defendants in this action.[3] In light of the substantial relief provided by the Settlement and the substantial risks and delays of continued litigation, Plaintiffs and Class Counsel believe the proposed Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. As such, the Court should preliminarily approve the Settlement and direct the commencement of the Notice Plan.

Plaintiffs and Class Counsel have, for nearly three years, actively pursued relief on behalf

---

[3]The release of claims is detailed in the Settlement Agreement, § 1.39.

of the Plan and the Settlement Class.  The Parties agreed to the Settlement only after extensive briefing of substantive and procedural motions, fact and expert discovery, substantial trial preparation, and arm's-length negotiations by experienced counsel under the auspices of an experienced neutral mediator, including at a day-long private mediation.  Resolving the case at this juncture allows the Parties to avoid continued and costly litigation that would deplete resources which could otherwise be used for the resolution of this action, and which might result in a recovery of less than that provided by the Settlement, or no recovery at all.

The Court previously certified this action as a class action based upon findings that each of the prerequisites of Rule 23(a) and 23(b)(1) were met.  None of the circumstances that warranted certification at that stage have changed.  In fact, the circumstances of the proposed Settlement further support class action treatment, and warrant the entry of an order maintaining certification through the entry of a final judgment.

As set forth below, all prerequisites for preliminary approval of the Settlement are satisfied.  As such, Plaintiffs' preliminary approval should be granted and notice should be provided to members of the Settlement Class in accordance with the proposed Notice Plan.  The proposed Notice Plan—which consists of: (1) an individual notice to be e-mailed and/or mailed to Settlement Class members at their last known addresses; (2) the creation of a dedicated website to share information with Settlement Class members, as well as a toll-free telephone number to which Settlement Class members can direct questions about the Settlement—satisfies the requirements of Rule 23[4] and due process and is consistent with notice plans approved by courts and implemented in similar ERISA action class settlements.

The Court should grant Plaintiffs' Motion, which would enable notice of the Settlement

---

[4]References to a "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise indicated.

and related applications to be provided to members of the Settlement Class, and schedule a fairness hearing during which the Court may fully and finally determine whether the Settlement and related applications should be finally approved and a final judgment entered.

## **BACKGROUND**

### A.     **The Parties, the Plan, and Plaintiffs' Claims**

The Plan is a large employer-sponsored 401(k) defined contribution retirement plan sponsored by Omnicom.  *See* Second Amended Complaint ("SAC"), ECF No. 54, ¶ 4.  Plaintiffs are current and former participants of the Plan who invested in the investments challenged in this action.  *See id.*, ¶¶ 9–18.  Omnicom established the Committee and appointed their members to manage and administer the Plan.  The Committee oversees administration of the Plan and selection of the Plan's administrative service providers.  *See id.*, ¶¶ 19–21.

Plaintiffs alleged that Defendants were fiduciaries of the Plan at all times during the Class Period.  *See id.*, ¶ 5.  Fiduciaries of the Plan are obligated to act for the exclusive benefit of participants, invest the assets of the Plan in a prudent manner, and ensure that the Plan's expenses are fair and reasonable in relation to the services obtained by the Plan.  *See id*. Defendants retained service providers, including Fidelity, on behalf of the Plan to perform certain administrative and investment functions.  *See id*.

Plaintiffs principally claim that Defendants breached fiduciary duties owed to the Plan and its participants and beneficiaries under ERISA § 404, 29 U.S.C. § 1104, by failing to discharge their duties with respect to the Plan:  "solely in the interest of the Plan's participants and beneficiaries and (a) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the Plan (b) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man

acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (c) by failing to act in accordance with the documents and instruments governing the Plan." SAC, ECF No. 54, ¶ 80. In addition, Plaintiffs claim that "Defendants violated their respective fiduciary duties under ERISA to monitor other fiduciaries of the Plan in the performance of their duties." *Id.* Defendants dispute Plaintiffs' claims, deny Plaintiffs' allegations, and deny that they engaged in any improper conduct. *See* ECF No. 55 (Defendants' Answer to the Second Amended Complaint).

### B.    Procedural History

On May 29, 2020, Plaintiffs Tepper, Adams, Mensack, and Dise filed their action under ERISA. On July 31, 2020, Plaintiff Maisonette filed an action asserting similar ERISA claims (ECF No.1). On September 16, 2020, the parties filed a stipulation consolidating the related cases (ECF No. 12), which the Court entered on September 17, 2020 (ECF No. 13). Plaintiffs filed their Consolidated Class Action Complaint on September 25, 2020 (ECF No. 17). Defendants moved to dismiss the Consolidated Class Action Complaint, which the Court granted in part and denied in part (ECF No. 52). The Court granted Defendants' motion to dismiss with respect to challenged investment options in which Plaintiffs had not personally invested, and denied Defendants' motion to dismiss to the extent it challenged Plan investments in which Plaintiffs personally invested, and the Plan's recordkeeping and administrative ("RK&A") fees. On September 27, 2021, Plaintiffs filed the SAC (ECF No. 54). The claims pled in the SAC proceeded to discovery.

Plaintiffs moved to certify the action as a class action and for the appointment of class representatives and class counsel (ECF No. 69). Defendants opposed Plaintiffs' motion and cross-moved for partial summary judgment (ECF No. 101). The Court granted Defendants' motion for partial summary judgment, dismissing for lack of standing Plaintiffs' challenges to

Plan investment options in which Plaintiffs did not invest, and certified the more limited Class proposed by Defendants (ECF No. 124).  The certified claims therefore were limited to Defendants' claims that (1) from May 2014 through March 2019, Defendants were imprudent in retaining the Fidelity Freedom Funds as the Plan's target-date fund (or "TDF") option, and (2) starting in April 2021, Defendants were imprudent in allowing Plan participants to be charged a purportedly excessive annual fee of $34 by the Plan's recordkeeper.

Following the close of fact and expert discovery, Defendants moved for summary judgment on each of Plaintiffs' claims and sought exclusion of Plaintiffs' experts (ECF Nos. 130, 131–133).  On December 23, 2022, the Court granted in part and denied in part Defendants' motions, including granting summary judgment for Defendants on any claims relating to the Plan's $12 administrative fee (ECF No. 191).

The Parties were scheduled to proceed to trial in February 2023.

On February 24, 2023, the Parties reported the Settlement to the Court (ECF No. 249).

### C.      Discovery Efforts

The Parties engaged in significant discovery efforts in this action, including the exchange of document requests and interrogatories and the production of tens of thousands of pages of documents and communications related to the administration of the Plan, relationships between and among fiduciaries, and the Plan's investment and recordkeeping monitoring processes.  *See* Rubinow Decl., ¶ 7.  Plaintiffs deposed a corporate representative of Omnicom and numerous members of the Committee and others charged with aspects of Plan management and administration, and Defendants deposed Plaintiffs.  *See id.*  The Parties also disclosed expert reports bearing on issues of fiduciary process standards, the retirement plan recordkeeping marketplace and recordkeeping fee rates, fiduciary investment principles, and damages.  *See id.* The Parties deposed the experts anticipated to testify at trial.  *See id.*

In addition to formal discovery taken in the course of the litigation, the Parties exchanged additional information concerning Plaintiffs' claims and Defendants' defenses within the context of the mediation and follow-up discussions. *See id.*, ¶ 8. These additional exchanges enabled the Parties to further evaluate the strengths and weaknesses of their respective positions.

### D.      Settlement Negotiations

The Parties agreed to and held a mediation on January 25, 2023 with Mark E. Segall, Esquire, of JAMS, and exchanged mediation briefs regarding their respective positions prior to the mediation. Although the Parties were unable to reach a resolution at the mediation, counsel for the Parties continued to engage in follow-up exchanges of information, as well as informal communications, for several months following the mediation. During the pendency of these discussions, the Parties communicated their positions regarding the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses, and the Plan's alleged losses. Plaintiffs continued to confer with experts to analyze their claims and the Plan's losses. The Parties were ultimately able to reach an agreement in principle on the eve of trial.

The Parties worked over the ensuing months to memorialize their agreement in writing, concluding those efforts with the execution of the Settlement Agreement on June 23, 2023.

### E.      The Proposed Settlement

The Settlement Agreement provides that Defendants will make payment in an aggregate amount of $2,450,000.00 into a Qualified Settlement Fund to be allocated to participants, former participants, beneficiaries, and alternate payees of the Plan pursuant to the Plan of Allocation. Settlement Agreement, § 1.27, 4.4, 4.5, Ex. B (Plan of Allocation). In exchange, Plaintiffs' claims on behalf of the Plan and the Settlement Class will be released, as set forth more fully in the Agreement. Settlement Agreement, § 1.39. The Settlement Agreement and the proposed Preliminary Approval Order also set forth a proposed Notice Plan, and the Settlement Agreement

provides for a request of attorneys' fees, expenses, and for Class Representatives' case contribution award, all of which are subject to the Court's approval.  Agreement, §1.49, Article 2.  In addition, the Settlement Agreement requires that Defendants retain an independent fiduciary on behalf of the Plan to review the Settlement and related applications and approve of the release of claims on behalf of the Plan.  Settlement Agreement, § 2.1.

### F.    The Notice Plan and Settlement Administration

The Parties respectfully request that the Court schedule a Fairness Hearing, at or after which the Court will be asked to make a determination, pursuant to Rule 23, as to whether the Court should approve the proposed Settlement.  Plaintiffs propose the following schedule:

| Event | Reference to [Proposed] Prelim. Approval Order | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | To the extent the Court deems necessary, on a date convenient for the Court within 30 days from the date the motion for preliminary approval is filed |
| Distribute Settlement Notice and Former Participant Claim Forms | ¶ 8 | Within 45 calendar days of preliminary approval order |
| Final approval papers and fee request | ¶ 9 | 45 calendar days before Fairness Hearing |
| Independent Fiduciary report | Settlement Agreement § 2.1.2 | Not later than 30 calendar days before the Fairness Hearing |
| Deadline for filing of objections | ¶ 11 | At least 30 calendar days before the Fairness Hearing |
| Deadline for Parties to respond to objections | ¶ 11 | Not later than 7 calendar days before Fairness Hearing |
| Fairness Hearing | ¶ 6 | On a date convenient for the Court but no sooner than 140 calendar days after the date the motion for entry of the Preliminary Approval Order is filed |

## ARGUMENT

### A.     The Settlement Warrants Preliminary Approval

"Courts in this Circuit recognize a strong judicial policy in favor of settlements, particularly in the class action context." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, 2016 WL 6542707, at \*6 (D. Conn. Nov. 3, 2016) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A.* ("*Wal-Mart Stores*"), 396 F.3d 96, 116 (2d Cir. 2005)) (internal quotation marks omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.* ("*Prudential*"), 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions."). The Settlement is emblematic of the compromise favored by courts in this District and Circuit.

### 1.     Legal Standard

Review of a proposed class action settlement is a two-step process. First, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice is sent to the class and a hearing is conducted, the Court determines whether to approve the settlement on a finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

A court should grant preliminary approval to authorize notice to the class upon a finding that it "will likely be able" to finally approve the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). In considering preliminary approval, a court looks to both the "negotiation process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *In re Platinum & Palladium Commod. Litig.*, 2014 WL 3500655, at \*11 (S.D.N.Y. July 15, 2014). The Court should grant preliminary approval in this matter because the proposed settlement is procedurally and substantively fair, reasonable, and adequate.

Preliminary approval is not a final determination; a full evaluation is made at the final approval stage, following notice of the settlement to class members.  *See Prudential*, 163 F.R.D. at 210.  Plaintiffs now simply request that the Court take the first step and preliminarily approve the Settlement so that notice can be distributed to the Settlement Class.  *See, e.g.*, *Torres v. Gristedes Operating Corp.*, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010).

### 2. The Court is Likely to Grant Final Approval of the Proposed Settlement

"To be likely to approve a proposed settlement under Rule 23(e)(2), the Court must find 'that it is fair, reasonable, and adequate.'"  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).  This inquiry includes four explicit factors enumerated in Rule 23(a)—*i.e.*, (1) adequacy of representation; (2) existence of arm's-length negotiations; (3) adequacy of relief; and (4) equitableness of treatment of class members—as well as the familiar *Grinell* factors.[5]  *See id.*; *see also In re IPO Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.").

#### i. The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval

##### a. Adequacy of Representation

---

[5]The *Grinell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See City of Detroit v. Grinell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

"Rule 23(e)(2)(A) requires a Court to find that 'the class representatives and class counsel have adequately represented the class . . . .'" *GSE Bonds*, 414 F. Supp. 3d at 692.  The adequacy determination includes inquiries into both the plaintiff and his or her counsel.  *See id*. Plaintiffs and Class Counsel satisfy the requirements of Rule 23(e)(2)(A).  First, Plaintiffs' interests are aligned with all other members of the Settlement Class because they all suffered injuries of the same kind as a result of Defendants' alleged Plan-level conduct.  Second, Class Counsel are "qualified, experienced, and able" to conduct the litigation, as demonstrated by their successful prosecution of numerous ERISA actions and the outstanding result here.  *See id*.

> b.  The Settlement is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel

Under Rule 23(e)(2)(B), "[i]f a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, [a settlement] will enjoy a presumption of fairness."  *GSE Bonds*, 414 F. Supp. 3d at 693; *see also Wal-Mart Stores*, 396 F.3d at 116 (noting strong "presumption of fairness" where settlement is product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery); *In re Flag Telecom Holdings Ltd. Sec. Litig.*, 2010 WL 4537550, at *13 (S.D.N.Y. Nov 8, 2010) (same).  The Agreement was negotiated at arm's-length, over the course of several months, by adverse parties, each represented by counsel experienced in complex ERISA litigation.  The parties also conducted independent analyses to support the Settlement. *See* Rubinow Decl., ¶ 8.  The substantial motion practice, full discovery, trial preparation, and extensive settlement negotiations demonstrate there has been no collusion or complicity of any kind in connection with the Settlement or related negotiations.  *See id.*

Moreover, in determining the good faith of negotiations, the Court should consider the judgment of Class Counsel.  *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL

11

4115809, at *12 (S.D.N.Y. Nov. 7, 2007) (courts should "consider the opinion of experienced

counsel with respect to the value of the settlement"); *In re PaineWebber Ltd. P'ships Litig.*, 171

F.R.D. 104, 125 (S.D.N.Y. 1997) ("'Great weight' is accorded to the recommendation of

counsel, who are most closely acquainted with the facts of the underlying litigation."), *aff'd*, 117

F.3d 721 (2d Cir. 1997).  Class Counsel have significant experience in similar litigation, and are

well-informed about this Action.  *See* Rubinow Decl., ¶ 6.  Accordingly, their judgment that the

Settlement is in the best interest of the Settlement Class should be given considerable weight.

c.  Adequacy of Relief

In assessing the adequacy of relief accorded by a proposed settlement, under Rule

23(e)(2)(C), courts must consider the following:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class,
> including the method of processing class-member claims, if required;
> (iii) the terms of any proposed award of attorney's fees, including timing of
> payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).  The adequacy inquiry under Rule 23(e)(2)(C) overlaps, in

significant measure, with several of the *Grinnell* factors, "which help guide the Court's

application of Rule 23(e)(2)(C)(i)."  *See GSE Bonds*, 414 F. Supp. 3d at 693.

*The costs, risks, and delay of trial and appeal.*  ERISA breach of fiduciary duty actions

are difficult to prosecute and "involve a complex and rapidly evolving area of law."  *In re

Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *5 (D.N.J. May 31, 2012);

*In re Wachovia Corp. ERISA Litig.*, 2011 WL 7787962, at *4 (W.D.N.C. Oct. 24, 2011).  New

precedents are frequently issued, and the demands on counsel and courts are complex, requiring

the devotion of significant resources.  The prosecution of this action and the risks that Plaintiffs

faced in establishing liability and damages as well as maintaining a class action through trial

overwhelmingly support preliminary approval.  Indeed, absent settlement, the Parties would

proceed to a complex trial, and even if Plaintiffs prevailed, it could be years before any recovery

would be received in light of the likelihood of appeals.  Because of "the lengthy, costly, and

uncertain course of further litigation, the settlement provides a significant and expeditious route

to recovery for the Class," and "it may be preferable 'to take the bird in the hand instead of the

prospective flock in the bush.'"  *Prudential*, 163 F.R.D. at 210 (quoting *Oppenlander v.*

*Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)).  Moreover, since continued litigation

increases expenses, it could result in a smaller recovery, even ignoring the time value of money.

Plaintiffs' pursuit of the Plan's alleged losses resulting from the course of conduct

asserted in this Action began nearly three years ago in June 2020.  Since then, the Parties have

acquired extensive knowledge and information about the claims and defenses relevant to this

action, sufficient to evaluate the "the merits of Plaintiff['s] claims, the strengths of the defenses

asserted by Defendants, and the value of Plaintiff['s] causes of action for purposes of

settlement."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002); *see*

*also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004).  Class

Counsel's thorough investigation, coupled with the significant discovery and pre-trial filings in

this action, has afforded Class Counsel a significant understanding of the merits of the claims

asserted, the strength of Defendants' defenses, and the values of theoretical outcomes of the case,

which is reflected by the rounds of briefing and extensive settlement negotiations.  Class

Counsel's reliance upon experts also supports a finding that the Parties had adequate information

and evidentiary support for the Settlement.  *See GSE Bonds*, 414 F. Supp. 3d at 699; *Plummer v.*

*Chem. Bank*, 668 F.2d 654, 659 (2d Cir. 1982).

The record in these proceedings and the law confirm the risks of establishing liability and

damages. In order to succeed on the merits, Plaintiffs would need to establish that Defendants'

investment and recordkeeping monitoring processes were deficient, in the face of Defendants'

evidence and arguments supporting their fiduciary practices. That competing evidence would

have included arguments based upon the substantive prudence of Defendants' fiduciary decisions

and the procedural prudence of Defendants' monitoring processes. Defendants were prepared to

present evidence at trial regarding their consideration of other TDF options prior to and during

the Class Period. Additionally, Defendants were prepared to present evidence at trial regarding

the Committee's process, pursuant to which the Committee conducted a request for proposal

("RFP") for RK&A services that yielded Fidelity's $34 per participant proposal.

Indeed, in advance of trial, Defendants submitted the written declarations of five

Committee members, which would have served as their direct testimony at trial. ECF Nos. 216–

219, 224. Defendants also submitted four written declarations from independent third parties

who advised the Committee regarding one or more of the specific investment and recordkeeping

decisions at issue in the litigation: the Plan's outside counsel, the Committee's independent

investment consultant, and a consultant hired to conduct the Plan's RFP for RK&A services.

ECF Nos. 212–215. Case specific factors supporting the proposed Settlement include certain

strengths of Defendants' fiduciary process as set forth in the record evidence, the more limited

class periods implicated by Plaintiffs' claims involving the Fidelity Freedom Funds, and

Defendants' arguments regarding the Plan's recordkeeping and administrative expenses—all of

which would present unique challenges to establishing Defendants' liability.

Plaintiffs anticipated that Defendants, relying upon expert testimony, would also

challenge Plaintiffs' damages calculations. Thus, even if Plaintiffs were successful in

establishing liability at trial, there was a substantial risk that the Court would accept Defendants'

damages arguments and award less than the funds secured by the Settlement, or nothing at all. Defendants were prepared to present arguments that Plaintiffs' damages calculations failed appropriately to account for the impact of revenue sharing payments made to the Plan by managers of the Plan's investments; that Plaintiffs' chosen comparators for calculating damages as to investment options and recordkeeping fees were not plausible or appropriate; and that the decision to carry out an RFP for recordkeeping services precluded a finding of loss causation, among other arguments aimed at reducing recoverable damages.

In addition to the risks of establishing liability and damages, Plaintiffs face a risk of maintaining this Action as a class action through trial.  Consistent with ERISA §§ 409 and 502(a)(2), Plaintiffs bring their claims on behalf of the Plan and plead the same as class claims. *See* 29 U.S.C. §§ 1109, 1132(a)(2); SAC.  While Plaintiffs are confident this Action satisfies Rule 23, there is a risk (however modest) that circumstances or the law could change, and the Court could decertify the class at a later stage.  The Agreement alleviates that risk.

*The effectiveness of the proposed method of distributing relief.*  The Settlement Agreement and Plan of Allocation provide for a notice and claims process designed to ensure relief is effectively accorded to Settlement Class members.  Because the Settlement Class is comprised of participants and beneficiaries of a company benefits plan, much of the data necessary to administer the Settlement is in the possession of the Plan's recordkeepers.  Indeed, Participants with active accounts in the Plan need not even submit a claim form to receive relief. Administration of the Settlement will effectively "deter or defeat unjustified claims," without being "unduly demanding."  *GSE Bonds*, 414 F. Supp. 3d at 694 (citing Fed. R. Civ. P. 23, Adv. Comm. Note, 2018 amend., sub. (e)(2)(c)).  Additionally, "while the plan of allocation must be fair and adequate, it need only have a reasonable, rational basis, particularly if recommended by

experienced and competent class counsel." *Id*. (internal quotation marks omitted).  The Plan of Allocation would provide *pro rata* recovery relative to the average size and strength of the categories of claims.  The Plan of Allocation represents a reasonable method of ensuring "the equitable and timely distribution of a settlement fund without burdening the process." *Id*. at 695.

*The terms of the proposed award of attorneys' fees*.  As stated in the proposed long form notice, Class Counsel anticipates making a request for Attorneys' Fees and Costs, Administrative Expenses, and Case Contribution Awards collectively in an amount not to exceed one-third of the Gross Settlement Amount ($816,666.67).  These anticipated applications are subject to Court approval and are consistent with amounts regularly awarded in complex litigation of this type.  In addition, the independent fiduciary retained on behalf of the Plan will consider these additional applications in connection with its review of the Settlement and approval of releases by the Plan. Class Counsel are aware of no agreements required to be disclosed under Rule 23(e)(3).

### ii.     The Remaining *Grinell* Adequacy Factors Weigh in Favor of Preliminary Approval

As discussed above, the Second Circuit has traditionally relied upon the nine *Grinell* factors to guide a district court's determination of whether to finally approve a class action settlement.  To the extent that they are applicable at this stage, they can be used as guidelines for considering preliminary approval.  *See In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008).  Complete analysis of these factors is not required for preliminary approval to be granted.  *See id.* (citing *Prudential*, 163 F.R.D. at 210).  Moreover, because several of these factors are addressed in the analysis under Rule 23(e)(2), the discussion that follows will focus on non-overlapping factors under *Grinell*: (i) the reaction of the class to the settlement; (ii) the ability of Defendants to withstand a greater judgment; and (iii) the range of reasonableness of the Settlement in light of the best possible recovery and attendant risks.

16

        a.   The Reaction of the Class to the Settlement is Better Assessed
              at the Final Approval Stage

"The Court need not consider [this factor], which requires the Court to evaluate the reaction of the settlement class, because consideration of this factor is generally premature at the preliminary approval stage." *GSE Bonds*, 414 F. Supp. 3d at 699 (citing *Warner Chilcott*, 2008 WL 5110904, at *2).  Members of the Settlement Class will have the opportunity to share their reactions to the Settlement, including by filing objections, pursuant to the Notice Plan and final approval procedures.  Further, an independent fiduciary will review the Settlement and related applications, as well as any objections or comments regarding the Settlement that may filed prior to the issuance of its report, before determining whether to approve of the release of claims on behalf of the Plan.  Thus, this factor is better assessed at the final approval stage.

        b.   The Ability of Defendants to Withstand a Great Judgment
              Does Not Weigh Against Preliminary Approval

While there is no evidence that Defendants could not withstand a greater judgment, courts have regularly held that, "against the weight of the remaining factors, this fact alone does not undermine the reasonableness of [a settlement]." *GSE Bonds*, 414 F. Supp. 3d at 696; *see also In re AOL Time Warner ERISA Litig.*, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) (finding "the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair," rather this factor "must be weighed" in conjunction with the other *Grinnell* factors).  The Court need not find that Defendants could not withstand a greater judgment in order to conclude the Settlement warrants preliminary approval.

        c.   The Range of Reasonableness of the Settlement in Light of the
              Best Possible Recovery and Attendant Risks support
              Preliminary Approval

"In considering these facts, the settlement amount's ratio to the maximum potential

recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 495 (S.D.N.Y. 2008).  In fact, courts in this Circuit have approved of settlements where the plaintiffs did not offer a damages estimate at all.  *See id*.  This is because "some risks would be attendant upon continuing to litigate." *GSE Bonds*, 414 F. Supp. 3d at 696; *Flag Telecom*, 2010 WL 4537550, at *20 ("[T]he issue for the Court is not whether the Settlement represents the 'best possible recovery,' but how the Settlement relates to the strengths and weaknesses of the case."). "[I]n any case, there is a range of reasonableness with respect to a settlement." *Id*. (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  In any event, the range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693.

Plaintiffs estimated the Plan's losses they allege were attributable to excessive RK&A fees by comparing the Plan's actual fees to the rate that Plaintiffs' expert opined was a market rate.  *See* Rubinow Decl., ¶ 10.  Plaintiffs estimated the Plan's losses they allege were attributable to the challenged investments by calculating the difference in terminal aggregate wealth actually achieved by the Plan with the terminal aggregate that would have been achieved assuming replacement with the most suitable alternative investment identified by Plaintiffs' expert.  *See id.*  Defendants' experts opined that the Plan had no losses on account of the Plan's RK&A fees and challenged investments.  The damages awarded to Plaintiffs in the event they proved liability would be subject to the factfinder's determinations with respect to several significant variables.  First, the factfinder would need to determine the alternative investments against which the Plan's losses should be measured, as well as the reasonable market rate for the Plan's RK&A fees.  Second, the factfinder would need to determine the appropriate interest rate

to apply, ranging from the conservative 1-year Treasury rate to the more aggressive S&P 500-return rate.  Defendants disputed Plaintiffs' allegations and arguments as to each of these issues.  And all of these figures presuppose a finding of liability.

Plaintiffs and their experts have estimated realistically achievable damages as ranging from an average of $4,841,354 to $5,302,136, with a midpoint of $5,071,745, based upon the comparator used and interest rate applied, and offsetting any potentially duplicative losses suffered by the Plan.  Accordingly, the Settlement recovery is quite significant, as it would represent just over 48% of midpoint of average of realistically recoverable damages calculations of Plaintiffs and their experts.  *See* Rubinow Decl., ¶ 10.  This recovery rate range sits comfortably within those accepted by other courts in this Circuit.  *See, e.g.*, *GSE Bonds*, 414 F. Supp. 3d at 697 (13-17%); *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (10-15%); *In re Interpublic Sec. Litig.*, No. 02 CIV.6527(DLC), 2004 WL 2397190, at *8 (S.D.N.Y. Oct. 26, 2004) (10-20%); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012) (3.5%); *see also Wilson v. DirectBuy, Inc.*, 2011 WL 2050537, at *13 (D. Conn. May 16, 2011) ("the Second Circuit has long held that even settlements which represent a fraction of the best possible result may be appropriate in light of the risks associated with bringing such claims") (citing *Grinnell*, 495 F.2d at 455 n.2).  Detailed calculations and backup information concerning the Plan's losses was exchanged in connection with the mediation process and will be made available to the Independent Fiduciary.  In sum, the Court should find that the Settlement falls well within the range of reasonable outcomes.

### B.    The Proposed Notice Plan Should be Approved

In addition to preliminarily approving the proposed Settlement, the Court must approve

the proposed means of notifying Settlement Class members.  *See* Fed. R. Civ. Proc. 23(c)(2); *see also Global Crossing*, 225 F.R.D. at 448.  "Adequate notice is essential to securing due process of law for the class members, who are bound by the judgment entered in the action." *Id*.  In order to satisfy due process considerations, notice to Settlement Class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Prudential*, 163 F.R.D. at 368.

The Notice Plan includes multiple components designed to reach the largest number of Settlement Class members possible.  First, the Notice will be sent by email and/or first-class mail to the last known address of each Settlement Class member prior to the Final Approval Hearing. Notably, all Settlement Class members had Plan accounts, so the Plan recordkeeper(s) has addresses for them, at least as of the Settlement Class Period, and has their Social Security numbers which can be used to do an address update if Notices are returned as undeliverable. *See Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 477-78 (E.D. Pa. 2007).  Additionally, the Notice will be posted on a website established by the Settlement Administrator at the direction of Class Counsel, along with other documents related to the litigation such as a list of frequently asked questions and the Agreement with all of its exhibits.  The Notice will also provide contact information for Class Counsel.  The Settlement Administrator, at the direction of Class Counsel, will also establish and monitor a dedicated, toll-free telephone number for the purpose of fielding any inquiries by member of the Settlement Class.

The Notice Plan agreed upon by the Parties satisfies all due process considerations and meets the requirements of Rule 23.  It describes in plain English: (i) the terms and operation of the Settlement; (ii) the nature and extent of the released claims; (iii) the maximum attorneys'

fees, expenses, and Plaintiffs' case contribution awards that may be sought; (iv) the procedure and timing for objecting to the settlement; and (v) subject to the Court's schedule, the date and location of the Final Approval Hearing.  District courts across the country have approved as fair similar notice plans.  *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) (concluding that "notice forms and methods employed [we]re substantially similar to those successfully used in many previous ERISA class settlements"); *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 4779017, at *3 (E.D. Mich. July 29, 2013) (adopting substantially similar notice plan).

### C.      Certification of the Class Should be Maintained for Settlement Purposes

The requirements of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  *See Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *In re US FoodService Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013).  In certifying the Class, this Court previously found that each of the prerequisites of Rule 23(a) were satisfied and that the Class should be certified under Rule 23(b)(1).  None of the facts supporting the Court's certification order have changed; in fact, the circumstances of a settlement provide even greater support for class certification.  This is because Plaintiffs assert claims on behalf of the Plan, and participants have uniform theories of liability and relief, and the structure of ERISA requires that participants and beneficiaries bringing actions for breach of fiduciary duty must do so on behalf of a plan as a whole.  The Settlement would provide relief to the Plan itself, which would then be distributed to participant accounts.  The Court should maintain certification.

#### 1.      The Settlement Class Satisfies Rule 23(a)

##### i.      Numerosity

The numerosity requirement of Rule 23 dictates that a putative class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).

21

Impracticability does not equate to impossibility, but merely means that the difficulty of joining all class members makes the use of the class action device appropriate. *See Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007). Numerosity may be presumed when a class consists of 40 or more members. *See Vellali v. Yale Univ.*, 333 F.R.D. 10, 16 (D. Conn. 2019); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The Plan had more than 35,000 participants at during the Class Period, easily meeting the numerosity requirement. *See* Rubinow Decl., ¶ 5.

### ii.     Commonality

The commonality prerequisite requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality involves "the capacity of a class[-]wide proceeding to generate common *answers* apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks omitted). This occurs when there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

This action implicates numerous common questions of law and fact that could be resolved "in one stroke" are central to the validity of the plaintiffs' claims. For instance, the plaintiffs' claims depend on whether the defendants breached their fiduciary duties by selecting and retaining unsuitable investments and by causing the Plan to pay excessive fees. The evidence necessary to answer these questions will "generate common *answers* apt to drive the resolution of the litigation." *See Wal-Mart*, 564 U.S. at 359. Moreover, Plan participants selected from the same menu of investment options and paid recordkeeping fees, thus the alleged Plan-wide mismanagement similarly affected all putative class members. At trial, the focus of the Parties' trial presentations and the application of the law would implicate the same questions.

### iii.    Typicality

Typicality means the claims of the representative plaintiffs be typical of the claims of the class.  *See* Fed. R. Civ. P. 23(a)(3).  "Typicality does not require that the situations of the named representatives and the class members be identical."  *In re Oxford Health Plan, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000); *see also Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *13 (S.D.N.Y. Jul. 27, 2007) ("typicality requirement is not demanding.").  Typicality is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Vellali*, 333 F.R.D. at 17 (quoting *Flag Telecom*, 574 F.3d 29, 35 (2d Cir. 2009)) (quotation marks omitted).  When the same conduct was directed at "both the named plaintiffs and the class . . . the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Id.* (quoting *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993)).

### iv.    Adequacy

The representative plaintiffs must also show that they will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy prerequisite is met where: (1) the proposed class representative's interests are to vigorously pursue the claims of the class and are not antagonistic to the interests of other class members; and (2) proposed class counsel are qualified, experienced, and able to conduct the litigation.  *See Flag Telecom*, 574 F.3d at 35.

In certifying the Class, the Court found that Plaintiffs' interests and incentives are aligned with members of the Class.  That has borne out, as Plaintiffs have remained actively involved in the litigation through its duration.  *See* Rubinow Decl., ¶ 4.  Further, Plaintiffs' adequacy is demonstrated through the proposed Plan of Allocation, which would provide for *pro rata*

distribution of Settlement proceeds.  *See* Settlement Agreement, Ex. B.  The Plan of Allocation

does not provide for any greater distribution to Plaintiffs than that to which any similarly situated

Class members would be entitled.  *See id.*  The Court also previously found that Class Counsel

are adequate as a result of their experience and demonstrable competency in complex litigation.

### 2.       Certification Remains Appropriate Under Rule 23(b)(1)

Certification of the Class may be maintained through final approval under Rule 23(b)(1),

which is the appropriate part of Rule 23 under which to grant certification in ERISA actions

because any recovery, including the restoration of losses, must be paid into the Plan in the first

instance, and any injunctive relief will obviously affect the Plan as a whole.  *See Mass. Mut. Life*

*Ins. Co. v. Russell*, 473 U.S. 134, 139–40 (1985).  For this reason among others, the Court

previously found that certification of the Class was appropriate under Rules 23(b)(1).

### D.       The Plan of Allocation Should be Approved

To warrant approval, a plan of allocation must be fair and adequate.  *In re Facebook, Inc.,*

*IPO Secs. and Derivative Litig.*, 343 F. Supp. 3d 394, 414 (Nov. 26, 2018).  "The formula

established for allocation need only have a reasonable, rational basis, particularly if

recommended by experienced and competent class counsel."  *Id.*; *see also Guevoura Fund Ltd. v.*

*Silverman*, 2019 WL 6889901, at *10 (S.D.N.Y. Dec. 18, 2019) ("[T]he adequacy of an

allocation plan turns on whether counsel has properly apprised itself of the merits of all claims,

and whether the proposed apportionment is fair and reasonable in light of that information.")

(quotation marks omitted).  "[W]hether the allocation plan is equitable is squarely within the

discretion of the district court."  *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,

2015 WL 6964973, at *7 (E.D.N.Y. Nov. 10, 2015) (internal citations and alterations omitted)).

The Plan of Allocation "was prepared by experienced counsel along with a damages expert—both indicia of reasonableness." *Facebook, Inc.*, 343 F. Supp. 3d at 414.  The Plan of Allocation provides for *pro rata* distribution of the Qualified Settlement Fund among Settlement Class members who invested in the Fidelity Freedom Funds based on their balances invested in the funds during the Class Period, and Settlement Class members who paid a flat fee for recordkeeping based on the number of years they paid such a flat fee.  The Plan of Allocation applies a premium to the claims involving the Fidelity Freedom Funds, as the damages associated with such claims were greater and, in Class Counsel's judgment, the RK&A claims were weaker.  Courts in this District regularly approve plans of allocation where, as here, "[a plan] provides recovery to [c]lass members, net of administrative expenses and attorneys' fees and expenses, on a *pro rata* basis."  *In re Marsh ERISA Litig.*, 265 F.R.D. 128 at 145; *see also AOL Time Warner*, 2006 WL 903236, at *17 (approving *pro rata* plan of allocation).

Distributions to Settlement Class members who are active participants of the Plan will be made by allocating recovery amounts into their active Plan accounts, while distributions to former Plan participants, beneficiaries, and alternate payees will be made by check or tax-qualified rollover to an individual retirement account or other qualified employer plan.  The Plan of Allocation is substantially similar to those approved and utilized similar ERISA actions.[6]

## **CONCLUSION**

Plaintiffs respectfully request the Court grant the Motion in its entirety.

---

[6] *See, e.g.*, *Larson v. Allina Health System*, 2019 WL 6208648, at *2 (D. Minn. Nov. 21, 2019); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 3000490, at *5 (C.D. Cal. Feb. 6, 2018); *In re Marsh ERISA Litig.*, 265 F.R.D. at 145–46; *In re AOL Time Warner*, 2006 WL 2789862, at *10 (S.D.N.Y. Sept. 27, 2006); *In re Worldcom, Inc. ERISA Litig.*, 2004 WL 2338151, at *8 (S.D.N.Y. Oct. 18, 2004).

DATED: June 23, 2023

Respectfully submitted,

/s/ *Laurie Rubinow*
James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
        lrubinow@millershah.com

James C. Shah
Alec J. Berin
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
        ajberin@millershah.com

Kolin C. Tang
MILLER SHAH LLP
19712 MacArthur Boulevard, Suite 222
Irvine, CA 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: kctang@millershah.com

Anna K. D'Agostino
MILLER SHAH LLP
225 Broadway
New York, NY 10007
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: akdagostino@millershah.com

*Attorneys for Plaintiff, the Plan,*
*and the Settlement Class*