USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/12/2023

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re Omnicom Group Inc. ERISA Litigation* | Case No.: 1:20-cv-04141-CM-SLC |
| | MEMORANDUM AND ORDER |

Colleen McMahon, Senior United States District Judge:

Plaintiffs,[1] on behalf of the Omnicom Group Retirement Savings Plan (the "Plan") and the preliminarily certified Settlement Class of participants and beneficiaries in the Plan, move for Final Approval of Class Action Settlement and Attorneys' Fees, Expenses, and Case Contribution Awards (the "Motion"), pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order," ECF No. 256).

Specifically, Plaintiffs request that the Court: (1) grant final approval of the Settlement with Defendants, as memorialized in the Settlement Agreement dated June 23, 2023; (2) maintain certification of the Settlement Class; (3) find the manner in which the Settlement Class was notified of the Settlement was the best notice practicable under the circumstances, and fair, reasonable, and adequate; (4) approve the Plan of Allocation; and (5) award attorneys' fee, expenses, and case contribution awards of $816,666.67, one-third of the Gross Settlement Amount of $2,450,000.00, which includes case contribution awards of $7,500.00 to each named Plaintiff.

---

[1]Plaintiffs are Carol Maisonette, Shane Tepper, Surfina Adams, Michael Mensack, and Daniel Dise (collectively, "Plaintiffs"). Defendants are Omnicom Group Inc. ("Omnicom"), the Board of Directors of Omnicom Group Inc. ("Board"), and the Administrative Committee of the Omnicom Group Retirement Savings Plan ("Committee") (collectively, "Defendants," and with Plaintiffs, the "Parties").

Defendants do not oppose the Motion. For the following reasons, Plaintiffs' motion is GRANTED.

## **INTRODUCTION**

The Motion seeks final approval of the proposed Settlement to resolve this thoroughly contested ERISA action.  The Parties negotiated the Settlement at arm's-length just days before they were prepared to commence a week-long bench trial in February 2023.  The Settlement provides immediate, certain relief to the Settlement Class, which would have faced significant hurdles in recovering the Plan's alleged losses in the absence of the Settlement.  The action was litigated through numerous dispositive and procedural motions, full discovery, and trial preparation.  The Settlement would provide total relief of $2,450,000.00 to the Settlement Class.

On July 5, 2023, the Court entered the Preliminary Approval Order, which, among other things, conditionally certified the Settlement Class and found that notice to the Settlement Class was warranted.  *See* Preliminary Approval Order, ECF No. 256. The Notice amply describes the terms of the Settlement, nature and history of the litigation, manner in which objections can be lodged, as well as the Plan of Allocation, and anticipated requests for fees, expenses, and case contribution awards.  Notice of the Settlement and related applications has been provided to the Settlement Class, and the reaction of the Settlement Class has been overwhelmingly positive—in fact, ***only one objection has been filed*** among the more than 74,000 who received notice. Moreover, the November 1, 2023, report of the Independent Fiduciary retained on behalf of the Plan pursuant to the Settlement determined that the Settlement was reasonable and recommended that the Plan not object.

For these reasons, I conclude that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class.  The significant efforts of Plaintiffs and Class Counsel in achieving the Settlement recovery warrant the requested awards of attorneys' fees, expenses, and

case contribution awards, each of which are well within the range regularly approved in this Circuit. The Court therefore grants the Motion in its entirety.

## BACKGROUND

### A.    Procedural History

This ERISA action arises out of the consolidated complaints in actions filed on May 29, 2020, and July 31, 2020, respectively. ECF Nos. 12, 13. The Consolidated Class Action Complaint was filed on September 25, 2020. ECF No. 17. Defendants moved to dismiss the Consolidated Class Action Complaint, which the Court granted in part and denied in part. ECF No. 52. On September 27, 2021, Plaintiffs filed the Second Amended Complaint. ECF No. 54. Defendants dispute Plaintiffs' claims, deny Plaintiffs' allegations, and deny that they engaged in any improper conduct. ECF No. 55 (Defendants' Answer).

Plaintiffs moved to certify the action as a class action. ECF No. 69. Defendants opposed Plaintiffs' motion and cross-moved for partial summary judgment, which Plaintiffs did not oppose. ECF No. 101. The Court granted Defendants' motion for partial summary judgment, dismissing for lack of standing Plaintiffs' challenges to Plan investment options in which they did not invest, and certified a Class limited to claims that: (1) from May 2014 through March 2019, Defendants failed to appropriately monitor and retaining the Fidelity Freedom Funds as the Plan's target-date fund (or "TDF") option; and (2) starting in April 2021, Defendants caused Plan participants to pay excessive fees to the Plan's recordkeeper. ECF No. 124.

The claims pleaded in the Second Amended Complaint proceeded to discovery. Following the close of discovery, Defendants moved for summary judgment and sought exclusion of Plaintiffs' experts. *See* ECF Nos. 130, 131–133). On December 23, 2022, the Court granted in part and denied in part Defendants' motions, including granting summary judgment for Defendants on any claims relating to the Plan's $12 administrative fee. ECF No.

191.

The Parties were scheduled to proceed to trial in February 2023.  On February 24, 2023, the Parties reported the Settlement to the Court.  ECF No. 249.

**B.     The Settlement**

The Settlement provides that Defendants will make payment in an aggregate amount of $2,450,000.00 into a Qualified Settlement Fund to be allocated to participants, former participants, beneficiaries, and alternate payees of the Plan pursuant to the Plan of Allocation. *See* Settlement Agreement, ECF No. 254-1, §§ 1.27, 4.4, 4.5 Ex. B (Plan of Allocation).  In exchange, Plaintiffs' claims on behalf of the Plan and the Settlement Class will be released.  *See id.*, at § 1.39.  The Settlement Agreement and the proposed Preliminary Approval Order also set forth a proposed Notice Plan, and the Settlement Agreement provides for a request of attorneys' fees, expenses, and for Class Representatives' case contribution award, all of which are subject to the Court's approval.  *See id.*, at § 1.49, Article 2.  In addition, Defendants retained the Independent Fiduciary on behalf of the Plan to review the Settlement and related applications and approve of the release of claims on behalf of the Plan, consistent with Department of Labor ("DOL") guidance regarding ERISA's prohibited transaction provisions.  *See id.*, at § 2.1.

The Parties negotiated the Settlement at arm's-length over the course of several months leading up to the trial that was scheduled to begin in February 2023.  The Parties participated in a full-day mediation on January 25, 2023 with Mark E. Segall, Esquire, of JAMS, and exchanged mediation briefs regarding their respective positions prior to the mediation.  Although the Parties were unable to reach a resolution at the mediation, counsel for the Parties continued to engage in follow-up exchanges of information, as well as informal communications, following the mediation.  During these discussions, the Parties communicated their positions regarding the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses, and the Plan's alleged

losses.  Plaintiffs continued to confer with experts to analyze their claims and the Plan's losses. The Parties were ultimately able to reach an agreement in principle on the eve of trial.  The Parties worked over the ensuing months to memorialize their agreement in writing, concluding those efforts with the execution of the Settlement Agreement on June 23, 2023.

The Settlement, which was reached just days before trial, would provide significant and immediate benefit to the Settlement Class, while recognizing the complexity, risk, and delay associated with continued litigation.  The proposed Settlement will resolve all claims that were or could have been asserted by Plaintiffs on behalf of the Settlement Class and the Plan against Defendants in this action.[2]  If not for the Settlement, the road ahead for the Parties would have been complex, involving a bench trial with over a dozen fact and expert witnesses, post-trial motions, and likely appeals.  Plaintiffs and Class Counsel submit that the Settlement represents an excellent result for the Plan and Settlement Class under all of the circumstances.

Resolving the case at this juncture allows the Parties to avoid continued litigation that would deplete resources which could otherwise be used for the resolution of this action, and which might result in a recovery of less than that provided by the Settlement, or no recovery.

### C.      Class Notice

In accordance with the Preliminary Approval Order, Strategic Claims Services ("SCS") disseminated the Settlement Notice by electronic and/or first-class mail to over 74,000 potential members of the Settlement Class and the Former Participant Claim Form to each potential Class Member without an Active Account by August 21, 2023.[3]  *See* Declaration of Cornelia Viera

---

[2] The release of claims is detailed in the Settlement Agreement, § 1.39.

[3] Since the Settlement Class consists of two subsets of participants and beneficiaries in the Plan, the mailing list (derived from participant data provided by the Plan's recordkeeper for each year during the Class Period) was overinclusive.  Nonetheless, the data provided and Plan of Allocation will ensure distributions are made only to members of the Settlement Class.

Concerning the Mailing of the CAFA Notice, Settlement Notice and Former Participant Claim Form ("Vieira Decl."), at ¶ 5. SCS employed reasonable commercial means to obtain updated address information and forwarding addresses to increase the effectiveness of notice mailing. *See id.* SCS also established a website for the Settlement, which provides information about the case and relevant deadlines and also makes available pertinent documents, and a toll-free telephone number and email address to which members of the Settlement Class could direct questions about the Settlement. *See id.*, at ¶¶ 4, 11. On September 28, 2023, SCS sent a reminder post card to each Former Participant, Beneficiary, and Alternate Payee who do not return the Former Participant Claim Form prior to the deadline for submission of the same. *See id.*

### D. Distribution of the Settlement Fund and Reaction of the Settlement Class

More than 40,000 members of the Settlement Class will automatically receive allocations of Settlement proceeds. *See* Vieira Decl., at ¶ 16. SCS has received more than 3,800 Former Participant Claim Forms as of October 27, 2023. *See id.* The deadline for submitting the Former Participant Claim Form was November 2, 2023. *See id.* After payments are issued to Class Members, any amount remaining in the Settlement Fund from uncashed checks will be distributed to the Plan to be utilized for the benefit of participants and beneficiaries, with no reversion to Defendants.

An objection to the Settlement, and more specifically to the Plan of Allocation, was lodged by a member of the Settlement Class after effectuation of the Notice Plan. The objection was the only objection to the Settlement. *See* Declaration of Laurie Rubinow ("Rubinow Decl."), at ¶ 9; *see also* Vieira Decl., at ¶ 14.

### E. Efforts of Plaintiffs and Class Counsel

Plaintiffs and Class Counsel have vigorously pursued relief on behalf of the Plan and the

Settlement Class.  Plaintiffs had significant involvement in all phases of the litigation, including devoting significant time and effort with Class Counsel to research the facts of the case, review filings, collect documents for anticipated discovery, and regularly confer with Counsel about litigation strategy and the progress of settlement negotiations, culminating with Plaintiffs' authorization of the Settlement.  *See* Rubinow Decl., at ¶ 8.  In addition, Plaintiffs were prepared to attend the trial scheduled for February 2023 and testify if called as witnesses.  *See id.*

Counsel and their professionals have spent, in the aggregate, nearly 6,000 hours in the prosecution of this case against Defendants, resulting in a lodestar of $2,701,842.50, with additional anticipated lodestar necessary to complete the representation in this matter.  *See* Rubinow Decl., at ¶ 12.  In addition, Class Counsel advanced expenses of $555,569.94 in its representation of the Class.  *See id.*, Ex. A.  Class Counsel represented Plaintiffs and the Class on a contingent basis and advanced necessary expenses without any guarantee of recovery.  *See id.*

The Parties engaged in significant document discovery efforts in this action, including the exchange of written discovery requests and the production of thousands of pages of documents and communications.  *See* Rubinow Decl., at ¶ 3.  Plaintiffs deposed a corporate representative of Omnicom and members of the Committee charged with aspects of Plan management and administration, and Defendants deposed Plaintiffs.  *See id.*  The Parties also disclosed anticipated testimony by experts bearing on issues of fiduciary process standards, the retirement plan recordkeeping marketplace and fee rates, fiduciary investment principles, and damages.  *See id.* The Parties deposed the experts set to testify at trial on behalf of the adverse party.  *See id.*

In addition to formal discovery taken in the course of the litigation, the Parties exchanged additional information concerning Plaintiffs' claims and Defendants' defenses within the context of the mediation.  *See id.*  These additional exchanges enabled the Parties to further evaluate the

strengths and weaknesses of their respective positions.

**F.     Independent Fiduciary Review**

The Independent Fiduciary issued a report on November 1, 2023, providing the Court with another touchstone to assess the fairness of the Settlement and related applications.  The Parties provided the Independent Fiduciary with sufficient information to enable it to evaluate the Settlement, including all requested public and confidential documents, and separate interviews of the Parties' counsel by the Independent Fiduciary.  Further, the Independent Fiduciary complied with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003 by the DOL, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination, for the purpose of Defendants' reliance on PTE 2003-30. The Independent Fiduciary's report found that "(i) the Settlement terms, including the scope of the release of claims, the $2,450,000.00 Settlement amount and the amount of the attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone; (ii) the terms and conditions of the transaction are no less favorable to the Plan than comparable arms-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances; and (iii) the transaction is not part of an agreement, arrangement, or understanding designed to benefit a party in interest." ECF No. 262-1. Accordingly, the Independent Fiduciary "determined that the Plan should not object to the Settlement or any portion thereof, including but not limited to the requested attorneys' fees and costs, and as such authorizes the Plan's participation in the Settlement." *Id.*

**<u>DECISION</u>**

A.    **Certification of the Settlement Class is Appropriate**

When the Court is presented with a proposed class action settlement, it must determine

whether the proposed settlement class satisfies the requirements for class certification under Rule

23. *See* FED. R. CIV. P. 23(e).  Specifically, a proposed class must meet the four requirements of

Rule 23(a) and the requirements of at least one subsection of Rule 23(b).  *See Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997); FED. R. CIV. P. 23.

The Preliminary Approval Order provisionally certified the Settlement Class[4] based upon

findings that Rules 23(a) and 23(b)(1) are satisfied.  *See* Preliminary Approval Order, ECF No.

256, at 2–3.  None of the circumstances that warranted provisional certification have changed.

Thus, the Settlement Class will be maintained through entry of a final judgment.

B.    **The Settlement Warrants Final Approval**

At this stage, the Court must determine whether the Settlement warrants final approval on

the substance.  "Courts in this Circuit recognize a strong judicial policy in favor of settlements,

particularly in the class action context." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,

2016 WL 6542707, at *6 (D. Conn. Nov. 3, 2016) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A.*,

396 F.3d 96, 116 (2d Cir. 2005)) (internal quotation marks omitted); *In re Prudential Sec. Inc.*

*Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an

overriding public interest in settling and quieting litigation, and this is particularly true in class

actions.").  The Settlement is emblematic of the compromise favored in this District and Circuit.

Rule 23(e) requires a two-step process for judicial approval for the settlement of class

claims: (1) preliminary approval; and (2) a subsequent fairness hearing and final approval.  *See*

---

[4]The Settlement Class is materially identical to the litigation Class certified in the Court's August
11, 2022 Class Certification Order (ECF No. 124), in which the Court likewise found the
prerequisites of Rule 23(a) and 23(b)(1) to be satisfied.

FED. R. CIV. P. 23(e). This inquiry includes four factors enumerated in Rule 23(a)—*i.e.*, (1)

adequacy of representation; (2) existence of arm's-length negotiations; (3) adequacy of relief;

and (4) equitableness of treatment of class members—as well as the familiar *Grinell* factors.[5]

*See id.*; *see also In re IPO Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

### 1. The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval

#### a. Adequacy of Representation

"Rule 23(e)(2)(A) requires a Court to find that 'the class representatives and class

counsel have adequately represented the class before preliminarily approving a settlement." *In

re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). The adequacy

determination includes inquiries into both the plaintiff and his or her counsel. *See id.* Plaintiffs

and Class Counsel satisfy these requirements. Plaintiffs' interests are aligned with all other

members of the Settlement Class because they allege to have suffered injuries of the same kind

as a result of Defendants' alleged Plan-level conduct. Class Counsel are "qualified, experienced,

and able" to conduct the litigation, as demonstrated by their successful prosecution of numerous

complex ERISA actions and the result achieved here. *See id.*

#### b. The Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel

Under Rule 23(e)(2)(B), "[i]f a class settlement is reached through arm's-length

negotiations between experienced, capable counsel knowledgeable in complex class litigation, [a

---

[5] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund. *See City of Detroit v. Grinell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

settlement] will enjoy a presumption of fairness." *GSE Bonds*, 414 F. Supp. 3d at 693; *see also Wal-Mart Stores*, 396 F.3d at 116 (same); *In re Flag Telecom Holdings Ltd. Sec. Litig.*, 2010 WL 4537550, at *13 (S.D.N.Y. Nov 8, 2010) (same).  The Settlement was negotiated at arm's-length, over the course of several months, by adverse parties, each represented by experienced counsel. *See* Rubinow Decl., at ¶¶ 13–14.  There has been no collusion or complicity of any kind.  *See id.*

Moreover, in determining the good faith of the Agreement, the Court should consider the judgment of Class Counsel. *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *12 (S.D.N.Y. Nov. 7, 2007) (courts should "consider the opinion of experienced counsel with respect to the value of the settlement"); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Class Counsel have significant experience in similar litigation, and are well-informed as to the specifics of this Action.  *See* Rubinow Decl., at ¶¶ 3, 5, 13.  Thus, their judgment that the Settlement is in the best interest of the Settlement Class should be credited.

c.  Adequacy of Relief

In assessing the adequacy of relief accorded by a proposed settlement, under Rule 23(e)(2)(C), courts must consider the following:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

FED. R. CIV. P. 23(e)(2)(C).  The adequacy inquiry under Rule 23(e)(2)(C) overlaps, in significant measure, with several of the *Grinnell* factors, "which help guide the Court's application of Rule 23(e)(2)(C)(i)." *See GSE Bonds*, 414 F. Supp. 3d at 693.

*The costs, risks, and delay of trial and appeal*.  ERISA breach of fiduciary duty actions

11

are difficult to prosecute and "involve a complex and rapidly evolving area of law." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *5 (D.N.J. May 31, 2012); *In re Wachovia Corp. ERISA Litig.*, 2011 WL 7787962, at *4 (W.D.N.C. Oct. 24, 2011). New precedents are frequently issued, and the demands on counsel and courts are complex, requiring the devotion of significant resources. The prosecution of this action and the risks that Plaintiffs faced in establishing liability and damages as well as maintaining a class action through trial overwhelmingly support final approval. Indeed, absent settlement, the Parties would proceed to a complex trial, and even if Plaintiffs prevailed, it could be years before any recovery would be received in light of the likelihood of appeals. Because of "the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class," and "it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush.'" *Prudential*, 163 F.R.D. at 210 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)). Moreover, since continued litigation increases expenses, it could result in a smaller ultimate recovery to the Settlement Class.

Plaintiffs' pursuit of the Plan's alleged losses resulting from the course of conduct asserted in this Action began more than three years ago in May 2020. Since then, the Parties have acquired extensive knowledge and information about the claims and defenses relevant to this action, sufficient to evaluate the "the merits of Plaintiff['s] claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiff['s] causes of action for purposes of settlement." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004). Class Counsel's thorough investigation, coupled with the significant discovery and pre-trial filings in this action, has afforded Class Counsel a significant understanding of the merits of the claims

asserted, the strength of Defendants' defenses, and the values of theoretical outcomes of the case. In addition, the Class Counsel's reliance upon expert consultation in assessing the claims, defenses and potential damages supports a finding that the Parties had adequate information in connection their negotiations and evidentiary support for the Settlement. *See GSE Bonds*, 414 F. Supp. 3d at 699; *Plummer v. Chem. Bank*, 668 F.2d 654, 659 (2d Cir. 1982).

The record in these proceedings and the law confirm the risks of establishing liability and damages. In order to succeed on the merits, Plaintiffs would need to establish that Defendants' investment and recordkeeping monitoring processes were deficient, in the face of Defendants' evidence and arguments supporting their fiduciary practices. That competing evidence would have included, *inter alia*, arguments based upon the substantive and procedural prudence of Defendants' monitoring processes. Defendants were prepared to present evidence at trial regarding their consideration of other TDF options prior to and during the Class Period, and the analysis and recommendation of their independent investment consultant supporting the decision to switch in 2019 from the Fidelity Freedom Funds to a different Fidelity-offered TDF. Additionally, Defendants were prepared to present evidence at trial regarding the Committee's process, guided by an experienced independent consultant, pursuant to which the Committee conducted a request for proposal ("RFP") for RK&A services that yielded Fidelity's $34 per participant proposal as the lowest relevant RK&A fee bid received.

Case specific factors supporting the proposed Settlement include certain strengths of Defendants' fiduciary process as set forth in the record evidence, the more limited class periods implicated by Plaintiffs' claims involving the Fidelity Freedom Funds, and certain strengths of Defendants' arguments regarding the Plan's recordkeeping and administrative expenses—all of which would present unique challenges to establishing Defendants' liability.

Even if Plaintiffs successfully established liability at trial, there was a substantial risk that the Court would accept Defendants' damages arguments and award less than the funds secured by the Settlement, or nothing at all.  Defendants were prepared to present arguments that Plaintiffs' damages calculations failed appropriately to account for the impact of revenue sharing payments made to the Plan by managers of the Plan's investments; that Plaintiffs' chosen comparators for calculating damages were not plausible or appropriate; and that the decision to carry out an RFP for recordkeeping services precluded a finding of loss causation, among other arguments aimed at reducing recoverable damages.

In addition to the risks of establishing liability and damages, Plaintiffs faced a risk (however modest) of maintaining this Action as a class action through trial.  Consistent with ERISA §§ 409 and 502(a)(2), Plaintiffs bring their claims on behalf of the Plan and plead the same as class claims.  *See* 29 U.S.C. §§ 1109, 1132(a)(2); SAC.  While Plaintiffs are confident this Action would satisfy Rule 23, there is always a risk that circumstances or the law could change, and the Court could find a reason to decertify or modify the class.

*The effectiveness of the proposed method of distributing relief.*  The Settlement Agreement and Plan of Allocation provide for a claims process designed to ensure relief is effectively accorded to Settlement Class members.  Because the Settlement Class is comprised of participants, former participants, beneficiaries, and alternate payees of a company benefits plan, much of the data necessary to administer the Settlement is in the possession of the Plan's recordkeepers.  Indeed, Participants with active accounts in the Plan need not even submit a claim form to receive the relief to which they are entitled.  Administration of the Settlement here will effectively "deter or defeat unjustified claims," without being "unduly demanding."  *GSE Bonds*, 414 F. Supp. 3d at 694 (citing Fed. R. Civ. P. 23, Adv. Comm. Note, 2018 amend., sub.

(e)(2)(c)). Additionally, "while the plan of allocation must be fair and adequate, it need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* (internal quotation marks omitted). The Plan of Allocation provides for *pro rata* distribution of the Qualified Settlement Fund among Settlement Class members who invested in the Fidelity Freedom Funds based on their balances invested in the funds during the Class Period, and Settlement Class members who paid a flat fee for recordkeeping based on the number of years they paid such a flat fee. The Plan of Allocation applies a premium to the Fidelity Freedom Funds claims, as the alleged damages associated with such claims were greater and, in Class Counsel's judgment, the RK&A claims were weaker. The Plan of Allocation represents a reasonable method of ensuring "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *Id.* at 695.

*The terms of the proposed award of attorneys' fees.* As stated in the proposed long form notice, Class Counsel makes a request for Attorneys' Fees and Costs, Administrative Expenses, and Case Contribution Awards collectively in an amount not to exceed one-third of the Gross Settlement Amount ($816,666.67). These applications are consistent with amounts regularly awarded in complex ERISA litigation. In addition, the Independent Fiduciary considered and approved of these additional anticipated applications in connection with its review of the Settlement and approval of releases by the Plan. Class Counsel are aware of no agreements required to be disclosed under Rule 23(e)(3).

### 2. The Remaining *Grinell* Adequacy Factors Weigh In Favor Of Final Approval

Courts within the Second Circuit has traditionally relied upon the *Grinell* factors to determine whether to finally approve a class action settlement. The Court preliminarily reviewed the Settlement under these factors in connection with its consideration of preliminary approval.

*See In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008).

Since several of these factors are addressed in the Rule 23(e)(2) analysis, the discussion will

focus on the relevant non-overlapping factors under *Grinnell*: (i) the reaction of the class to the

settlement; (ii) the ability of Defendants to withstand a greater judgment; and (iii) the range of

reasonableness of the Settlement in light of the best possible recovery and attendant risks.

### a.   The Reaction of the Class to the Settlement

"One of the factors most courts consider is the reaction of the absent class members,

specifically the quality and quantity of any objections and the quantity of class members who opt

out."  4 NEWBERG ON CLASS ACTIONS § 13:54 (5th ed.).[6]  "If only a small number of

objections are received, that fact can be viewed as indicative of the adequacy of the settlement."

*Wal-Mart*, 396 F.3d at 118; *Edwards v. North Am. Power & Gas, LLC*, 2018 WL 3715273, at

*10 (D. Conn. Aug. 3, 2018) (approving settlement where no objections); *Sykes v. Harris*, 2016

WL 3030156, at *12 (S.D.N.Y. May 24, 2016) (approving settlement where "a miniscule

number" of plaintiffs—38 individuals out of a potential 215,000 class members—requested

exclusions); *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012)

(approving settlement where "fewer than 1% of the tenants who received notice opted out of the

lawsuit, and an even smaller percentage objected.").  SCS provided direct Notice to over 74,000

individuals and only one filed an objection. *See* Rubinow Decl., at ¶ 8; *see also* Vieira Decl., at

¶ 14.  The near absence of objections indicates strong approval.

### b.   The Ability of Defendants to Withstand a Great Judgment Does Not Weigh Against Preliminary Approval

While there is no evidence that Defendants could not withstand a greater judgment,

---

[6]The reaction of opt-outs does not apply here as the Settlement Class was certified as a
mandatory class under Rule 23(b)(1).

courts have regularly held that, "against the weight of the remaining factors, this fact alone does

not undermine the reasonableness of [a settlement]." *GSE Bonds*, 414 F. Supp. 3d at 696; *see*

*also In re AOL Time Warner ERISA Litig.*, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006)

(finding "the mere ability to withstand a greater judgment does not suggest that the Settlement is

unfair," rather this factor "must be weighed in conjunction with all of the Grinnell factors, most

notably the risk of the class prevailing and the reasonableness of the settlement fund") (internal

quotation marks omitted).   Accordingly, the Court need not find that Defendants could not

withstand a greater judgment in order to conclude the Settlement warrants final approval.

### c.   The Range of Reasonableness of the Settlement Supports Preliminary Approval

"In considering these facts, the settlement amount's ratio to the maximum potential

recovery need not be the sole, or even the dominant, consideration when assessing the

settlement's fairness." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 495

(S.D.N.Y. 2008).   In fact, courts in this Circuit have approved of settlements where the plaintiffs

did not offer a damages estimate at all. *See id.* This is because "some risks would be attendant

upon continuing to litigate." *GSE Bonds*, 414 F. Supp. 3d at 696; *Flag Telecom II*, 2010 WL

4537550, at *20 ("[T]he issue for the Court is not whether the Settlement represents the 'best

possible recovery,' but how the Settlement relates to the strengths and weaknesses of the case.").

"[I]n any case, there is a range of reasonableness with respect to a settlement." *Id.* (quoting

*Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).   The range of reasonableness "recognizes

the uncertainties of law and fact in any particular case and the concomitant risks and costs

necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693.

Plaintiffs estimated the Plan's purported losses (i) attributable to alleged excessive

RK&A fees by comparing the Plan's actual fees to the rate that Plaintiffs' expert opined was a

reasonable market rate, and (ii) attributable to the challenged investments by calculating the difference in terminal aggregate wealth actually achieved by the Plan with the terminal aggregate that would have been achieved assuming replacement with a suitable alternative investment identified by Plaintiffs' expert. *See* Rubinow Decl., at ¶ 20. Defendants' experts opined that the Plan had no losses on account of the Plan's RK&A fees and challenged investments. The damages awarded to Plaintiffs in the event they proved liability would be subject to the Court's determinations with respect to several significant variables. First, the Court would need to determine the alternative investments against which the Plan's losses should be measured, as well as the reasonable market rate for the Plan's RK&A fees. Second, the Court would need to determine the appropriate interest rate to apply. Defendants disputed Plaintiffs' allegations and arguments as to each of these issues. All of these figures presuppose a finding of liability.

Plaintiffs and their experts have estimated realistically achievable damages as ranging from $4,841,354 to $5,302,136, based upon the comparator used and interest rate applied, and offsetting any potentially duplicative losses suffered by the Plan. Accordingly, the Settlement recovery is quite significant, as it would represent approximately 48% of the midpoint of the reasonable damages calculations of Plaintiffs and their experts. *See id.* This recovery rate range sits comfortably within those accepted by other courts in this Circuit. *See, e.g., GSE Bonds*, 414 F. Supp. 3d at 697 (13 to 17%); *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (10 to 15%); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *8 (S.D.N.Y. Oct. 26, 2004) (10 to 20%); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012) (3.5%); *see also Wilson v. DirectBuy, Inc.*, 2011 WL 2050537, at *13 (D. Conn. May 16, 2011) ("even settlements which represent a fraction of the best possible result may be appropriate") (citing *Grinnell*, 495 F.2d at 455 n.2).

### C.     The Plan of Allocation is Approved

The Plan of Allocation provides recovery to members of the Settlement Class on a *pro rata* basis for each of the claims at issue, with no preferential treatment for Plaintiffs or any segment of the Settlement Class.  This compares to plans approved by courts in analogous ERISA litigation and considers the relative strength of the claims.  *See, e.g., Garthwait v. Eversource Energy Company*, No. 3:20-cv-00902-JCH (D. Conn.), ECF No. 205; *Blackmon*, No. 5:20-cv-00988-ESC (W.D. Tex.), ECF No. 82; *Coca-Cola Consolidated Inc.*, No. 3:20-cv-00654-FDW-DSC (E.D.N.C.), ECF No. 98; *Terraza v. Safeway Inc.*, No. 16-cv-03994-JST (N.D. Cal.), ECF No. 268.  The Plan of Allocation is consistent with the obligation of ERISA fiduciaries to treat plan participants alike, and obviates any potential intraclass conflicts.  In addition, the Plan of Allocation provides that members of the Settlement Class with active accounts in the Plans will receive the distributions of settlement proceeds to which they are entitled automatically in their accounts.  As such, the Plan of Allocation is fair, reasonable, and adequate.

### D.     The Court Awards Attorneys' Fees, Expenses, and Case Contribution Awards

Rule 23 contemplates that courts may "award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."  FED. R. CIV. P. 23(h).  In class action litigation, the attorneys who secure a recovery for a class are generally "entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney related costs is considered part of the historic equity power of the federal courts."  7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §1803, at 325 (3d ed. 2005).

The Second Circuit recognizes two methods by which attorney's fees may be assessed:

(1) the "percentage of the fund" method; and (2) the lodestar method. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). Irrespective of the method, the court must find that the award is reasonable in light of: (1) "the time and labor expended by counsel"; (2) "the magnitude and complexities of the litigation"; (3) "the risk of the litigation"; (4) "the quality of representation"; (5) the requested fee's relationship to the settlement; and (6) "public policy considerations." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

Plaintiffs' request for attorneys' fees, expenses, and case contribution awards collectively of $816,666.67 is very modest and reflects Plaintiffs' and Class Counsel's efforts to return the greatest amount possible to the Plan. In fact, Class Counsel have incurred expenses in excess of $550,000 in litigating and preparing the case for trial.[7] *See* Rubinow Decl., Ex. A. In addition, settlement administrative expenses could total as much as $150,000. *See id.* When these amounts, as well as the total anticipated case contribution awards, are considered, the requested fees are a *de minimis* amount of the Settlement Fund.

Still, "[f]aced with able opposing counsel, Class Counsel demonstrated its competence and experience in the field of [ERISA] litigation by causing the claims of the class to progress beyond several dispositive motions through to preliminary settlement and certification. The award sought properly balances the policy goal of encouraging counsel to pursue meritorious [ERISA] litigation while protecting against excessive attorney's fees." *Menkes v. Stolt-Nielsen S.A.*, 2011 WL 13234815, at *5 (D. Conn. Jan. 25, 2011) (citing *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008)). While the Second Circuit has not established a benchmark for attorneys' fees using the percentage method, courts within the Circuit have

---

[7]This amount does not include any expenses incurred by Class Counsel for travel in connection with the litigation. Class Counsel do not seek reimbursement for travel costs in this case in order to ensure the expenses charged against the Settlement Fund are reasonable and appropriate.

recognized that the circumstances of a resolution of complex litigation reached after full, thorough litigation "weigh in favor of a percentage award within a close range of . . . one-third" of the common fund. *In re Fine Host Corp. Sec. Litig.*, 2000 WL 33116538, at *4 (D. Conn. Nov. 8, 2000); *see also Garthwait v. Eversource Energy Company*, Case No. 3:20-cv-00902-JCH, ECF No. 205 (awarding one-third of settlement fund as attorneys' fees in analogous ERISA action resolved just before trial). Class Counsel's efforts warrant the fees requested.

### 1. The Time and Labor Expended by Counsel

The first of the traditional factors in determining a reasonable common fund fee requires consideration of the time and labor expended by counsel. *See Goldberger*, 209 F.3d at 50. This factor weighs in favor of granting Class Counsel's request because Class Counsel has spent nearly 6,000 hours and advanced significant expense, in the investigation, prosecution, trial preparation, and resolution of this action. Class Counsel vigorously litigated this action for more than three years and just as aggressively negotiated the Settlement only days before the commencement of a week-long bench trial. Moreover, the work in this case is not over— Class Counsel will continue to incur additional time and expend resources in overseeing the administration of the Settlement and in responding to inquiries and issues from class members. *See, e.g., Johnson v. Brennan*, 2011 WL 4357376, at *16 (S.D.N.Y. Sept. 16, 2011) (recognizing that requested fees "are also meant to compensate Class Counsel for time that will be spent administering the settlement in the future"). Class Counsel has already and will continue to represent the interests of the Plan in overseeing the administration of the Settlement. *See* Rubinow Decl., at ¶ 12. All of Class Counsels' efforts in pursuing the litigation were undertaken despite the risk that Plaintiff would not prevail in this action, and that Class Counsel would therefore receive nothing for their time and efforts. The "time and labor expended by counsel" in producing an excellent settlement therefore support the fee requested. *See, e.g., In re*

*Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999).

Even considering Class Counsel's lodestar, the Court finds that the requested fee award is reasonable. The requested fee award would produce a lodestar multiplier of less than *.1*. A 2003 survey of 1,120 class actions confirmed that the lodestar multipliers averaged 3.89. *See* Attorney Awards in Common Fund Cases, 24 CLASS ACTION REP. 4 (2003). Moreover, the Independent Fiduciary reviewed Class Counsel's fee application and provided the Court with further confirmation of its reasonableness.

### 2.   The Magnitude and Complexity of the Litigation

The second *Goldberger* factor requires the Court to consider the complexity and magnitude of the litigation. *See Goldberger*, 209 F.3d at 50. This factor also weighs in favor of the Court approving the requested award. As analyzed above, the claims hinge on numerous complex legal and factual issues under ERISA which require comprehensive evidentiary support and testimony. Each party disclosed reports by expert witnesses and deposed each adverse expert witness. These same experts were expected to testify at the scheduled trial. The Parties briefed numerous substantive and procedural motions, including relatively novel issues around standing and class certification. The magnitude and complexity of the Action have been borne out by the time and effort Class Counsel put into litigating the case for over three years.

### 3.   The Risk of Litigation

The risk of the litigation is "perhaps the foremost factor to be considered in determining whether to award an enhancement." *Goldberger*, 209 F.2d at 54 (internal quotations and citations omitted). The risk undertaken by Class Counsel is measured by, among other things, the presence of government action preceding the suit, the ease of proving claims and damages, and, if the case resulted in settlement, the relative speed at which the case was settled. *See In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 139–40 (S.D.N.Y. 2008). This action

involves significant risk as to both liability and damages, given the complexity of the issues and

vigorous defense.[8]  The government was not involved, proving claims and damages would

require expert testimony, and settlement was considered thoughtfully and thoroughly.  *See, e.g.*,

*In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) ("The

determination, like the determination of liability, is a complicated and uncertain process,

typically involving expert opinions.").  Being able to present a favorable Settlement despite those

risks tends to support an award of fees in the amount requested.

### 4.  The Quality of Representation

The fourth factor is the "quality of representation" delivered in the litigation.

*Goldberger*, 209 F.3d at 50.  The quality of representation is best measured by results achieved.

*Id.*  The Settlement represents a recovery to the Settlement Classes which is within the range of

reasonableness in a case of complexity, magnitude and risk.  The nature of the opposition faced

by counsel should also be considered in assessing the quality of Class Counsel's performance.

*See In re Merrill Lynch Tyco*, 249 F.R.D. at 141.  The caliber of opposing counsel here was of

the high and required that Class Counsel deliver comparable representation.  *See, e.g., Carlson v.*

*Xerox Corp.*, 596 F. Supp. 2d 400, 412 (D. Conn. 2009) (approving fee request where "the Class

received high legal representation and obtained a very large settlement in the face of vigorous

opposition by highly experienced and skilled defense counsel").  Nonetheless, Class Counsel

managed to litigate the case to the trial stage and obtain partial class certification.  Class Counsel

has significant experience in complex ERISA litigation and brought their experience and

resources to bear in prosecuting this action.  *See* Rubinow Decl., at ¶¶ 5, 12.  The reaction of

---

[8]Demonstrating the risk inherent in ERISA actions, a recent trial in a similar action in the District
of Connecticut resulted in the jury returning a verdict in favor of the defendants on all claims.
*See Vellali*, No. 3:16-cv-1345 (AWT), ECF No. 622, at 1 (D. Conn. July 13, 2023).

Settlement Class members, which has been almost uniformly positive, also supports the requested fee. *See, e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 985 F. Supp. 410, 416 (S.D.N.Y. 1997) ("In determining the reasonableness of a requested fee, numerous courts have recognized that 'the lack of objection from members of the class is one of the most important reasons'") (citation omitted); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court."). The scarcity of objections to Class Counsel's fee application suggests the requested fee is fair. The ability of Class Counsel to obtain a substantial recovery for the Class Members under the circumstances of this litigation strongly favors the requested attorneys' fees.

### 5.   The Requested Fee's Relationship to the Settlement

The fifth factor for determining the appropriate percentage fee award in class actions is the "requested fee in relation to the settlement," *i.e.*, whether the requested fee represents a fair percentage of the settlement achieved. *Goldberger*, 209 F.3d at 50 (citation omitted). This factor also supports the requested award. The requested attorneys' fees, representing only a modest amount of the total recovery to the Class when expenses and other awards are considered, is well within the range of fees commonly awarded in other class action settlements in this Circuit. *See, e.g.*, *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 351 (S.D.N.Y. 2014) (noting median fee of 25 to 28 per cent of the fund in ERISA cases); *In re Sumitomo Copper Litigation*, 146 F. Supp. 2d 436, 441-42 (S.D.N.Y. 2001) (awarding approximately one-third of settlement as attorney fee award in commodities case); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (approving fee award of one-third in securities class action); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (approving of fee award at 40% of the settlement fund).

### 6.  Public Policy Considerations

The Second Circuit has also noted that "public policy considerations" should be considered in determining the fee awarded to plaintiffs' counsel in class actions. *Goldberger*, 209 F.3d at 50.  Protecting workers' retirement funds is of genuine public interest.  Private enforcement of ERISA's fiduciary duties, in the nature of this action, is a vital mechanism for protecting workers' retirement funds.  For this reason, it is critical that remuneration in successful enforcement actions like this one is both fair and rewarding—to make certain that injured parties are represented by counsel capable of effectively fighting for their rights.  *See In re AMF Bowling Sec. Litig.*, 334 F. Supp. 2d 462, 468 (S.D.N.Y. 2004).

The Court may award reimbursement of reasonable out-of-pocket expenses incurred by counsel and customarily charged to their clients, as long as these "were incidental and necessary to the representation." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).  Courts in this District have found the types of expenses incurred by Class Counsel to be necessary for effective class action representation. *See Menkes*, 2011 WL 13234815, at *5 (approving award of expenses for filing, research, mediation, and expert consultation, among other categories).  Here, Plaintiffs seek an award of one-third of the Settlement Fund for all applications, including litigation expenses.  Class Counsel's expenses are denominated by category in the relevant exhibit to the Rubinow Declaration and full records are maintained by Class Counsel. *See* Rubinow Decl., Ex. A.  These expenses were necessary to Class Counsel's effective representation of the Settlement Class and warrant approval.

### E.  The Class Representatives Should be Compensated for Their Efforts

"Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by

becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013). Where plaintiffs are involved in complex cases, a higher range of contribution awards may be sought. *See, e.g.*, *Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 2012 WL 2064907, at *3 (S.D.N.Y. June 7, 2012) (awarding $50,000 to each of the three named class representatives); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 151 (S.D.N.Y.2010) (awarding case contribution awards in the amount of $15,000 to each of the three named plaintiffs); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 264 (S.D.N.Y.2003) (collecting cases and granting an award of $15,000 to class representative).

Plaintiffs were engaged in all phases of the litigation, from pre-filing investigation to trial preparation. *See* Rubinow Decl., at ¶ 8. Plaintiffs provided documents to counsel and answered discovery requests, participated in regular calls with Class Counsel, and reviewed pleadings and other court documents in order to stay apprised of developments in the litigation and fulfill their duties to the Class. *See id.* Plaintiffs participated in settlement discussions on an ongoing basis. *See id.* Plaintiffs sat for depositions and were prepared to appear at trial. *See id.*

Notice of each of Plaintiffs' applications was provided to the Settlement Class and there have been no objections to such awards, providing more support that the requested awards are reasonable. The Independent Fiduciary's report also separately evaluated each of the applications and provided the Court with an independent basis to determine their reasonableness.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' motion for final approval of the settlement and for an award of attorneys' fees and expenses and case contribution award is granted. The Settlement Class will be maintained through entry of a final judgment. The Court approves the plan of allocation and finds that the manner in which the Settlement Class was notified of the Settlement was the best notice practicable under the circumstances, and fair, reasonable, and

adequate. In addition, Class Counsel is awarded attorneys' fee, expenses, and case contribution awards of $816,666.67, one-third of the Gross Settlement Amount of $2,450,000.00, which includes case contribution awards of $7,500.00 each to Plaintiffs.

The Clerk of Court is directed to terminate all pending motions and to mark this case closed.

Dated: December 12, 2023

_____
United States District Judge

BY ECF TO ALL PARTIES